UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AUTUMN HEALTH CARE
OF ZANESVILLE, INC., d/b/a
AUTUMN HEALTH CARE
OF ZANESVILLE,

                    Plaintiff,

                                            Case No. 2:13-cv-720
           v.                               JUDGE EDMUND A. SARGUS, JR.
                                            Magistrate Judge Norah McCann King
THE UNITED STATES
DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

                    Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. (ECF No. 3.)  For the reasons set forth below, the Court **DENIES** Plaintiff's motion and **DISMISSES** this action for lack of subject matter jurisdiction.

## I.

The following facts are undisputed, unless otherwise indicated.  Plaintiff, Autumn Health Care of Zanesville, Inc. d/b/a Autumn Health Care of Zanesville operates a skilled nursing facility in Zanesville, Ohio (the "Facility").  The Facility is a Medicare certified facility under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and is a Medicaid certified facility under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*  The portion of Medicare involved here, Part A, is a federally administered program that provides payment for inpatient hospital, nursing home and home health services to aged or disabled individuals who are eligible for social security benefits.  42 U.S.C. §§ 426, 1395c.  Medicaid is a

State-administered program providing payment for a range of medical care to individuals with

qualifying income and resources. 42 U.S.C. § 1396d(a).  Both programs are administered by the

Centers for Medicare and Medicaid Services ("CMS"), a component of the United States

Department of Health and Human Services ("HHS").

Payment from the federal government under Medicare and/or Ohio under Medicaid is

made directly to a nursing home for services furnished to eligible beneficiaries of both programs.

To qualify to receive payments under either program, a nursing home must be periodically

"certified" through onsite "surveys," as meeting the health and safety requirements specified in

the statute and HHS regulations.  42 U.S.C. §§ 1395i-3(a)(3), (b)-(d) (Medicare); 42 U.S.C. §§

1395r(a)(3), (b)-(d) (Medicaid); 42 C.F.R. § 483.1 *et seq.* (setting forth identical certification

requirements under both programs).

A facility that is certified enters into a provider agreement with the federal government

and/or the state.  42 U.S.C. § 1395cc(a) (Medicare); 42 U.S.C. § 1396a(a)(27) (Medicaid).  If it is

determined, through later surveys, that a previously certified facility no longer meets the

participation requirements, a variety of sanctions may be imposed including termination of the

provider agreement under either program.  42 U.S.C. §§ 1395i-3(g), (h), and 1395cc(b)(2)

(Medicare); 42 U.S.C. §§ 1396a(a)(33)(B) and 1396r(g), (h) (Medicaid).

Plaintiff alleges in its complaint that currently, approximately eleven percent (11%) of

the Facility's residents are Medicare beneficiaries, and approximately twenty-four percent

(24%) of the Facility's revenue is derived from Medicare beneficiaries; approximately sixty-six

percent (66%) of the Facility's residents are Medicaid beneficiaries, and approximately

fifty-three percent (53%) of its revenue is derived from Medicaid beneficiaries.  (ECF No. 1, ¶¶

46, 47.  Also, Plaintiff alleges that if its Medicare and Medicaid provider agreements are terminated, the Facility would have to discharge or transfer approximately seventy-seven percent (77%) of its residents, and it would cease receiving approximately seventy-seven percent (77%) of its revenue.  *Id.*, ¶ 49.  Defendants do not concede the accuracy of these percentage approximations, but agree that the percentage of Medicare/Medicaid funded residents at the Facility is substantial.  Plaintiff further contends that the Facility's president and his wife personally guaranteed a debt of over seven million dollars to the Facility's landlord and that, "[i]f the Facility closes, [Plaintiff] will be unable to make lease payments, the landlord will be unable to make loan repayments to the landlord, and [Plaintiff]'s president and his wife will have to fulfill their guarantee, if even possible."  (ECF No. 3 at 11.)

In June 2013, HHS notified Plaintiff that it was terminating the Facility's Medicare provider agreement effective August 2, 2013, due to its failure to bring the Facility into compliance with the Medicare requirements.  The Secretary maintains that the termination is the culmination of administrative actions reaching back to December 2008, when the facility was designated a Special Focus Facility ("SFF") due to its poor compliance history.  When a facility is placed in the SFF program, it receives two standard surveys per year instead of one.  CMS presents documentation that indicates that its practice is to terminate a facility that does not "graduate" from the SFF program after four standard surveys or within 24 months (18 months after April 5, 2013).  (ECF No. 13-2 at 5; ECF No. 13-3 at 3.)

CMS first moved to terminate the provider agreements with the Facility in May 2012, after eight (8) standard surveys had been conducted and the nursing home had not graduated from the SFF program.  Through negotiations, the parties entered into a Systems Improvement

3

Agreement, which effectively gave the Facility another year to graduate. (ECF No. 10-1.) In

consideration of continued Medicare/Medicaid reimbursement during the time Plaintiff

attempted to secure compliance, the Facility waived its right to appeal to any federal or state

court on any termination imposed as a result of surveys conducted during the extra year. In

relevant part, the Agreement provides:

> the Facility acknowledges that any extension of the June 27, 2012 termination of the
> Facility's Medicare and Medicaid Provider Agreements by CMS constitutes full and
> fair consideration for the Facility's waiver of appeal rights (under 42 C.F.R. Part 498
> and before any federal or state court) regarding (1) the imposition of remedies for the
> April 27, 2012 survey or for any other survey conducted during the term of this
> Agreement, including the remedy of termination . . . .

*Id.* at 2. The Agreement further provides:

> The Facility agrees to waive its right to appeal any remedies, including termination,
> imposed as a result of the April 27, 2012 survey and any other survey, including a
> re-visit, conducted during the term of this Agreement.

*Id.* at 6.

On June 21, 2013, Plaintiff requested a hearing on the termination imposed by HHS.

(ECF No. 3-3.) An Administrative Law Judge ("ALJ") thereafter acknowledged Plaintiff's

request for a hearing and issued an order requiring the Secretary to present pre-hearing argument

and factual materials by September 24, 2013, and Plaintiff to present its argument and factual

materials by October 29, 2013. *Id.* at 2. Plaintiff subsequently moved for an expedited hearing,

with such motion yet to be ruled upon by the ALJ

On July 22, 2013, Plaintiff filed this action against HHS and Secretary Sebelius, CMS

and Administrator Marilyn Tavenner, the Ohio Department of Job and Family Services and

Director Michael Colbert, the Ohio Department of Medicaid and Director John McCarthy, the

4

Ohio Department of Aging and Director Bonnie Burman, the Ohio Department of Health and
Director Theodore Wymyslo, M.D.  Plaintiff requests declaratory and injunctive relief, alleges
that Secretary Sebelius's termination of the Medicare and Medicaid provider agreements is
beyond the scope of her statutory authority and that the relevant regulations purporting to provide
extra-statutory authority are void and unenforceable.  (ECF No. 1, Counts I, II.)  Plaintiff also
alleges that the Secretary's failure to provide a hearing prior to termination of the provider
agreements violates state and federal constitutional due process.  (*Id.*, Counts III, IV.)

At the same time Plaintiff filed its complaint, it filed its Motion for a Temporary
Restraining Order.  (ECF No. 3.)  In that motion, Plaintiff requests a retraining order "(a)
prohibiting termination of [its] Medicare and Medicaid provider agreements, if at all, until after
administrative hearings and any subsequent administrative and judicial appeals and (b) requiring
continued reimbursement to [the Facility] for services rendered to Medicare and Medicaid
beneficiaries until after such hearings and any subsequent administrative or judicial appeals" *Id.*
at 1.

On the same day Plaintiff filed its emergency injunctive relief motion, July 22, 2013, this
Court held a conference pursuant to Local Rule 65.1.  *See* S.D. Ohio Civ. R. 65.1.  The Court
issued a scheduling order reflecting the agreements reached at that conference that permitted
briefing on Plaintiff's Motion for a Temporary Restraining Order and scheduled an oral hearing
on the motion for August 5, 2013.  (ECF No. 5.)  Pursuant to that Order, Defendants filed
memoranda in opposition to Plaintiff's motion (ECF Nos. 9, 10, 11, 12), and Plaintiff filed a
reply in support of its motion (ECF No. 15).  On the same day that they filed their memorandum
in opposition to Plaintiff's Motion for a Temporary Restraining Order, July 30, 2013, Defendants

HHS and Secretary Sebelius filed a motion to dismiss for lack of subject matter jurisdiction. (ECF No. 13.)

On August 5, 2013, the Court held the oral hearing on Plaintiff's motion, at which all parties were represented by well-prepared counsel.

## II.

Defendants argue that this Court lacks subject matter jurisdiction over this case because the United States Court of Appeals for the Sixth Circuit held in *Cathedral Rock of N. Coll. Hill v. Shalala*, 223 F.3d 354 (6th Cir. 2000), that providers such as Plaintiff are required to exhaust administrative remedies before an Administrative Law Judge, before challenging a termination in federal court. Further, Defendants posit that Plaintiff has waived any challenge to termination in the Systems Improvement Agreement, in which Plaintiff waived its right to contest any HHS termination based on a survey during the time of the agreement's term.

Plaintiff concedes that it did not exhaust its administrative remedies, but contends that it is excused from doing so based on its colorable constitutional due process claim.[1] Specifically, Plaintiff asserts that the Secretary's failure to provide a hearing prior to her termination of the

---

[1] Initially, Plaintiff asserted that it is entitled to injunctive relief because it is likely to succeed on the merits of its claim that "[t]ermination of [Plaintiff]'s provider agreements is not statutorily authorized and is outside the scope of the Secretary's authority" and because the "regulations purporting to provide extra-statutory authority are void, unenforceable, and do not provide authority to terminate" the provider agreements. (ECF No. 3 at 4, 6.) At oral argument, however, Plaintiff's counsel properly conceded that its claims related to the scope of the Secretary's authority is likely inextricably intertwined with its challenge to the validity of the Secretary's termination of the provider agreements and is, therefore, inappropriate for this Court to determine. *See Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000) (finding similar challenge "'inextricably intertwined' with Beechknoll's substantive challenge to the Secretary's termination decision because a favorable resolution of this claim would result in the reinstatement of its Medicare provider agreement").

provider agreements violates constitutional due process, a claim that is "entirely collateral" to a

substantive challenge of the Secretary's determination, and therefore, Plaintiff is permitted to

forego administrative exhaustion and bring its constitutional claim to this Court. Further,

Plaintiff maintains that the doctrine of unconstitutional conditions prohibits the government from

conditioning the receipt of a government benefit on waiver of constitutional rights.

The Court will address each argument in turn.

## A. Constitutional Due Process

*Cathedral Rock of North College Hill, Inc. v. Shalala*, controls the issue before this Court

and requires dismissal of this action for lack of subject matter jurisdiction.

The facts before the *Cathedral Rock* court are nearly identical in all relevant respects to

the facts in the case *sub judice*. In *Cathedral Rock*, the Secretary of HHS terminated a nursing

home's participation in the Medicare and Medicaid programs for its failure to substantially

comply with the regulations. The termination was to take effect on July 19, 1999. On that day,

the nursing home, Beechknoll, filed in federal district court a complaint and a motion for a

temporary restraining order. Beechknoll asked the district court to enjoin the Secretary from

terminating its participation in the Medicare and Medicaid programs until after the administrative

hearings, which is the same request Plaintiff here makes.

The *Cathedral Rock* defendants, like Defendants here, argued that the district court

lacked subject matter jurisdiction because Beechknoll failed to exhaust its administrative

remedies. The district court entered an order issuing a temporary restraining order for ten (10)

days for the purpose of preserving the *status quo* pending its decision on whether subject matter

jurisdiction existed. The Secretary then moved to dismiss for lack of subject matter jurisdiction,

7

which the district court granted.  The Sixth Circuit affirmed the district court's decision, stating: "In sum, we conclude that the district court did not have jurisdiction to consider the claims presented in Beechknoll's complaint or in its motion for preliminary injunctive relief because Beechknoll failed to exhaust its administrative remedies." *Cathedral Rock*, 223 f.3d at 366.

To reach this conclusion, the Sixth Circuit first looked at jurisdiction under the Medicare Act and concluded that the Act required exhaustion.  The court then considered whether there was an exception to the exhaustion requirement.  And, last, it determined that dismissal of the claims predicated on the Medicare Act necessitated dismissal of the Medicaid Act claims as well. This Court follows that analysis here.

### 1. Jurisdiction and the Medicare Act

"Under 42 U.S.C. § 1395cc(h)(1), an institution 'dissatisfied with a determination by the Secretary . . . described in subsection (b)(2) of this section shall be entitled to a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.'" *Cathedral Rock*, 223 F.3d at 358.  The referenced subsection (b)(2) sets forth the Secretary's power to terminate an agreement with a provider of services to participate in the Medicare program, including situations in which "the provider fails to comply substantially with the provisions of the agreement, [or] with the provisions of [the Medicare Act] and regulations thereunder." *Id.* (quoting 42 U.S.C. § 1395cc(b)(2)(A)).  The Secretary's findings and decision to terminate participation in the Medicare program thus are subject to judicial review under § 405(g), which states:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or

8

within such further time as the [Secretary] may allow.

42 U.S.C. § 405(g).

"Under 42 U.S.C. § 1395ii, the Medicare Act incorporates 42 U.S.C. § 405(h), which provides that the Secretary's findings and final decision after a hearing are binding on the parties to the hearing." *Cathedral Rock*, 223 F.3d at 358. "This provision also limits judicial review as follows: 'no findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided' and no action against the Secretary 'shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under' the Medicare Act." *Id.* (quoting 42 U.S.C. § 405(h)). "This section 'channels most, if not all, Medicare claims through [the] special review system' of an administrative hearing and 'purports to make exclusive the judicial review method set forth in § 405(g).'" *Id.* at 358–59 (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000); *Michigan Ass'n of Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 499 (6th Cir. 1997); *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 721 (6th Cir. 1991)).

The Sixth Circuit has "held that in order to obtain judicial review under § 405(g), a party must comply with '(1) a nonwaivable requirement of presentation of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive.'" *Id.* (quoting *Michigan Ass'n of Homes & Servs.*, 127 F.3d at 499, which relied on *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). "As so interpreted, the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'" where exceptions may apply and instead "demands the 'channeling' of virtually all legal attacks through the agency." *Id.* This system "assures the agency greater opportunity to apply, interpret,

9

or revise policies, regulations, or statutes without possibly premature interference by different individual courts," although "this assurance comes at a price, namely, occasional individual, delay-related hardship." *Id.* (quoting *Illinois Council*, 120 S. Ct. at 1093.) The *Illinois Council* Court "concluded, however, that 'in the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations . . . paying this price may seem justified.'" *Id.* at 359.

"Based on this interpretation of § 405(h), virtually all legal challenges to an administrative determination must be channeled through the Secretary's administrative process before judicial review is available as set forth in § 405(g), and any claimed exceptions to this requirement of exhaustion of administrative remedies must be examined critically." *Id.*

### 2. Exception to Exhaustion

The *Cathedral Rock* court next examined whether an exception to exhaustion existed. The court first considered an exception that is not relevant to this case, and then reviewed whether the "entirely collateral" exception set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), applied.

In *Mathews v. Eldridge*, "the Supreme Court held that the Secretary's denial of an individual's request for benefits constituted a final decision for the purpose of § 405(g) jurisdiction, even though he had not exhausted fully the Secretary's administrative procedures, because the individual's claim that a pre-deprivation hearing is constitutionally required is 'entirely collateral' to his substantive claim of entitlement and because he made a colorable claim that full relief would not be possible if he was awarded retroactive benefits through a post-deprivation hearing." *Cathedral Rock*, 223 F.3d at 361–62. The Sixth Circuit stated that

10

"[t]he Supreme Court recently explained that the *Eldridge* opinion did not create an exception to the application of § 405(g) and (h), but rather required the Secretary to excuse some of its procedural requirements so that its decision would be considered a 'final decision' and judicial review could follow under § 405(g)." *Id.* (citing *Illinois Council*, 120 S. Ct. at 1094.)

The *Cathedral Rock* court determined that the nursing home's argument that it was entitled to a pre-termination hearing under the Due Process Clause was "entirely collateral" from its substantive challenge to the Secretary's termination decision. *Id.* (citing *Eldridge*, 424 U.S. at 330-32.) The court then stated: "Because this particular challenge is 'entirely collateral,' we must determine whether Beechknoll has made a colorable claim that full relief would not be possible if it was awarded retroactive relief through a post-deprivation hearing." *Id.* at 364. To make this determination, the court directed:

> The Supreme Court has set forth the following factors for determining whether procedural due process requires a pre-termination hearing:
>
> > First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Eldridge*, 424 U.S. at 335).

Thus, this Court must engage in the same analysis to determine whether Plaintiff here has set forth a colorable procedural due process claim.

First, "the private interest at stake is not particularly strong because the [Facility, which is a] Medicare provider[,] is not the intended beneficiary of the Medicare program." *Id.* at 364–65

11

(citing *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1241-43 (7th Cir. 1981)).

Plaintiff argues, however, that it will suffer irreparable harm because of the economic impact the termination will have on the Facility when it loses 77% of its revenue. Plaintiff suggests that is may be required to shut-down the Facility. "Although termination of its agreement may have a severe economic impact on [Plaintiff], 'a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program.'" *Id.* at 365 (quoting *Northlake Cmty. Hosp.*, 654 F.2d at 1242; and citing to *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979) (commenting that the Medicare and Medicaid statutes were not designed "to provide financial assistance to providers of care for their own benefit" but rather "to aid the patients and clients of such facilities").

Plaintiff furthers suggests that losing its right to participate in the Medicare and Medicaid programs, will cause it to discharge and transfer its patients receiving care under these programs, causing these patients to suffer irreparable harm of "transfer trauma." *Cathedral Rock* addressed transfer trauma by citing to *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787-90 (1980), for the proposition that "nursing home patients do not have standing to challenge the Secretary's decertification of their facility." *Id.* at 364. Likewise, a provider of nursing home care has no standing to assert matters relating to harm to patients. Moreover, the termination was done to protect against this exact harm–trauma to patients based on lack of care at the Facility. Thus, this assertion does little to strengthen the Facility's private interest at stake here.

"Second, the 'the risk of erroneous deprivation of provider status is also quite manageable.'" *Id.* at 365 (quoting *Northlake Cmty. Hosp.*, 654 F.2d at 1242.). "A termination decision is well-documented and typically is based on survey reports from unbiased health

12

professionals who apply well-defined criteria developed through the administrative process; the
provider has the opportunity to submit written material in response to the survey findings so that
a hearing likely is not necessary for the provider to present its position." *See id.* (relying on
*Town Court Nursing Ctr., Inc. v. Beal*, 586 F.2d 266, 277 (3d Cir. 1978)). The evidence before
the Court shows that the termination decision here was indeed well documented, based on survey
reports that applied well-defined criteria, and that Plaintiff was provided the opportunity to
submit written material in response to the survey findings. The survey findings reflect numerous
compliance issues for the previous four years. And, there is nothing that suggests that the
multiple surveys were completed by biased health care professionals. Thus, the Court finds that
the risk of an erroneous deprivation is low.

Finally, "the government has a strong interest in expeditious provider-termination
procedures for two reasons: first, 'the Secretary's responsibility for insuring the safety and care of
elderly and disabled Medicare patients is of primary importance,' and second, 'the government
has a strong interest in minimizing the expenses of administering the Medicare program.'" *Id.*
(quoting *Northlake Cmty. Hosp.*, 654 F.2d at 1242.).

In "[b]alancing the government's strong interest in an expeditious procedure [and
insuring the safety and care of the elderly and disabled] against the provider's less significant
interest and the relatively small risk of erroneous termination," this Court concludes, as did the
*Cathedral Rock* court, that Plaintiff's "procedural due process rights are adequately protected by
a post-termination hearing." *Id.* (citing *Northlake Cmty. Hosp.*, 654 F.2d at 1242; *Varandani v.
Bowen*, 824 F.2d 307, 310-11 (4th Cir. 1987) (holding that a physician is not entitled to a formal
hearing before being suspended from the Medicare program under *Eldridge*), 484 U.S. 1052

13

(1988); *Ritter v. Cohen*, 797 F.2d 119, 123 (3d Cir. 1986) (concluding that a physician faced with termination of participation in the Medicaid program is not entitled to a pre-termination hearing under *Eldridge*); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981) (holding that a nursing home participating in the Medicaid program is not entitled to a pre-termination hearing)). Consequently, Plaintiff has not made a colorable claim that it is entitled to a pre-termination hearing under the Due Process Clause.

Accordingly, this Court lacks subject matter jurisdiction to consider the claims presented in Plaintiff's complaint or in its motion for preliminary injunctive relief because it failed to exhaust its administrative remedies and the "entirely collateral" exception fails to remedy the jurisdictional ban. *See Cathedral Rock*, 223 F.3d at 366 ("In sum, we conclude that the district court did not have jurisdiction to consider the claims presented in Beechknoll's complaint or in its motion for preliminary injunctive relief because Beechknoll failed to exhaust its administrative remedies and . . . the 'entirely collateral' exception, which . . . allow[s] federal jurisdiction despite the failure to exhaust all administrative remedies, is [not] applicable in this case.").

### 3. Jurisdiction Under the Medicaid Act

Plaintiff brings its claims under the Medicare and Medicaid Acts, which "impose common certification and quality of care requirements on nursing facilities." *Cathedral Rock*, 223 F.3d at 366 (citing 42 U.S.C. § 1395i-3(a)(3), (b)-(d) (Medicare); 42 U.S.C. § 1396r(a)(3), (b)-(d) (Medicaid); 42 C.F.R. § 483.1 (facilities must comply with the same requirements in order to participate in the Medicare and Medicaid programs)). "Where the Secretary finds that a dually certified nursing facility is not in compliance with these requirements, it has authority to

14

impose remedies on the facility, including termination, under both the Medicare and Medicaid Acts." *Id.* (citing 42 U.S.C. § 1395i-3(h)(2)-(4) (Medicare); 42 U.S.C. § 1396r(h)(3)-(5) (Medicaid)). "The regulations provide that the appeals procedures set forth for reviewing the Secretary's determinations affecting participation in the Medicare program also apply to the Secretary's determination to terminate a nursing facility's Medicaid provider agreement." *Id.* (citing 42 C.F.R. § 498.3(2)(I); see also 42 C.F.R. § 498.4 (stating that a Medicaid nursing facility is treated as a Medicare provider subject to the Medicare administrative appeals procedures when it has agreed to participate in both Medicaid and Medicare and is the subject of a compliance action following review of a state's survey findings)). "The Medicare and Medicaid statutory and regulatory provisions thus provide that when a dually certified facility challenges a determination that it is not in substantial compliance with the common Medicaid and Medicare regulations and a termination of its participation in both programs, the facility must seek review of this determination through the Medicare administrative appeals procedure." *Id.*

Therefore, this Court also lacks subject matter jurisdiction to consider Plaintiff's claims under the Medicaid Act. *Id.* at 367.

## B. Unconstitutional Conditions

Plaintiff argues that the doctrine of unconstitutional conditions prohibits the government from conditioning participation in the Medicare program on waiver of constitutional rights. "Under the unconstitutional conditions doctrine, 'a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights . . . .'" *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005) (citing *G & V Lounge, Inc. v. Mich. Liquor Control*

15

*Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994)).  Plaintiff suggests that this doctrine comes into

play here because "[i]n the Systems Improvement Agreement, the Centers for Medicare and

Medicaid Services and the Ohio Department of Health required [Plaintiff] to waive its rights to

judicial review and to sue—constitutional rights—in exchange for continued Medicare and

Medicaid participation—government benefits."  (ECF No. 15 at 1.)  Plaintiff's argument is not

well taken.

      While Plaintiff is correct that an agency may not condition benefits or compensation upon

unconstitutional conditions, it is also true that many constitutional rights may be knowingly and

voluntarily waived as part of the settlement of disputes.  *See e.g.*, *Town of Newton v. Rumery*,

480 U.S. 386 (1987) (upholding contract waiving right to bring civil claims for alleged violations

of constitutional rights by state actors); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th

Cir. 1985) (concluding that when a party knowingly, voluntarily, and intentionally signs a jury

waiver provision in a civil case, that party has waived its right to a jury trial); *Lake James Cmty.*

*Volunteer Fire Dep't v. Burke County*, 149 F.3d 277 (4th Cir. 1998) (agreement between a

volunteer fire department and the county that prohibited the fire department from suing the

county was enforceable, even though it waived the fire department's constitutional right to

petition the government); *cf. Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("By entering a guilty

plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to

trial by jury, the protection against self-incrimination, and the right to confront one's accusers.");

*United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012) (criminal defendat may waive of right to

appeal); *Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010) (a criminal defendant may knowingly

and voluntarily waive his right to testify).

In this case, the parties had an ongoing dispute which culminated in a lengthy agreement that included a waiver of the right to judicial review. The unconstitutional conditions doctrine does not invalidate this agreement. However, as discussed *supra*, even if this waiver were not binding, this Court still could not grant Plaintiff the relief it requests because of a lack of subject matter jurisdiction over this matter.

III.

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order and **DISMISSES** this action for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

8-6-2013

**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**